**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**



**Alexandria Division**

|  |  |
|---|---|
| | Case No. 1:24-cr-180-PTG |
| | <u>Count 1</u>: 18 U.S.C. § 1349<br>Conspiracy to Commit Bank Fraud |
| UNITED STATES OF AMERICA | |
| v. | <u>Counts 2-6</u>: 18 U.S.C. § 1344<br>Bank Fraud |
| RAYMOND RAHBAR JR.,<br>(Counts 1-14) | <u>Count 7</u>: 18 U.S.C. § 1956(h)<br>Conspiracy to Commit Money Laundering |
| RYAN MACAULAY,<br>(Counts 1, 5, 7, and 11) | <u>Counts 8-11</u>: 18 U.S.C. § 1957<br>Money Laundering – Unlawful Monetary<br>Transactions |
| *Defendants.* | <u>Count 12-13</u>: 18 U.S.C. § 1028A<br>Aggravated Identity Theft |
| | <u>Count 14</u>: 18 U.S.C. § 152(2)<br>Bankruptcy Fraud – Perjury |
| | **FORFEITURE NOTICE** |

**SUPERSEDING INDICTMENT**
November 2024 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

**INTRODUCTORY ALLEGATIONS**

At all times relevant to this Indictment, unless stated otherwise:

*BYNDfit and Associated Entities*

1.     Defendant RAYMOND RAHBAR JR. resided in Great Falls, Virginia, which is

within the Eastern District of Virginia.

2.     Defendant RYAN MACAULAY resided in Gambrills, Maryland.

3.     Coconspirator Carl Heinz Pierre resided in Washington, D.C. and Arlington,

Virginia.

1

4.    BF Chinatown LLC was a limited liability company organized under the laws of Delaware.

5.    BF Georgetown Waterfront LLC was a limited liability company organized under the laws of Virginia.

6.    BF Management LLC was a limited liability company organized under the laws of Virginia.

7.    BF Chinatown, BF Georgetown, and BF Management (collectively, the "BYNDfit entities") were created to facilitate the operation of a fitness center called BYNDfit. The BYNDfit entities were controlled by RAHBAR, MACAULAY, and Pierre.

8.    BYNDfit was supposed to open in the Gallery Place/Chinatown neighborhood of Washington, D.C. in the first half of 2020. As part of this process, BYNDfit rented commercial space from Company-1 to commence on February 23, 2020. However, BYNDfit never opened to the public and did not regularly pay rent to Company-1.

9.    When BYNDfit failed to pay rent to Company-1 as required, Company-1 sued BYNDfit for breach of contract and ejectment. Before that case resolved, BYNDfit—through BF Chinatown and BF Georgetown—filed for bankruptcy in the Eastern District of Virginia. The judges presiding over those proceedings dismissed the petitions and concluded the bankruptcies were filed in bad faith.

*Other Entities*

10.    8533 Georgetown Pike LLC was a limited liability company organized under the laws of Virginia. 8533 Georgetown was controlled by RAHBAR JR. who at times lived at the property.

11.     AMC Building Group Inc. was a corporation organized under the laws of Virginia. AMC Building was nominally owned by a person identified here as Individual-1 but controlled by RAHBAR JR. and MACAULAY at all relevant times.

12.     American Majestic Construction LLC was a limited liability company organized under the laws of Virginia. American Majestic was also nominally owned by Individual-1 but controlled by RAHBAR JR. at all relevant times.

13.     8533 Georgetown, AMC Building, and American Majestic (collectively, the "Construction entities") were created to facilitate various real estate and construction projects.

14.     Bank-1 provided a range of traditional banking services throughout the United States, including in the Eastern District of Virginia, and is a financial institution for purposes of Title 18, United States Code, Sections 20 and 1344. Bank-1 is headquartered in Richmond, Virginia which is within the Eastern District of Virginia.

15.     Bank-2 provided a range of traditional banking services throughout the United States, including in the Eastern District of Virginia, and is a financial institution for purposes of Title 18, United States Code, Sections 20 and 1344.

16.     Bank-3 provided a range of traditional banking services throughout the United States, including in the Eastern District of Virginia, and is a financial institution for purposes of Title 18, United States Code, Sections 20 and 1344.

17.     Bank-4 provided a range of traditional banking services throughout the United States, including in the Eastern District of Virginia, and is a financial institution for purposes of Title 18, United States Code, Sections 20 and 1344.

18.     Bank-5 provided a range of traditional banking services throughout the United States, including in the Eastern District of Virginia, and is a financial institution for purposes of

3

Title 18, United States Code, Sections 20 and 1344. Bank-5 is headquartered in Fairfax, Virginia, which is within the Eastern District of Virginia.

<u>*The Paycheck Protection Program*</u>

19.     In or around March 2020, in response to the economic crises caused by the novel coronavirus pandemic, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (the "CARES Act"). Among other things, the CARES Act made billions of dollars' worth of government-guaranteed loans available to qualified small businesses through the Paycheck Protection Program ("PPP"). The purpose of the loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees. The PPP was administered by the Small Business Administration ("SBA"), which promulgated regulations concerning eligibility for a PPP loan. Eligible businesses seeking a loan under the PPP could apply for such a loan through a federally insured depository institution.

20.     To qualify for a loan under the PPP, an applicant had to meet certain criteria, including, among other things, that it was "in operation on February 15, 2020 and either had employees for whom [it] paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC." The amount of the loan that could be approved under the PPP typically was a function of the applicant's historical payroll costs, consisting of compensation to its employees whose principal place of residence was the United States.

21.     The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, mortgage interest payments, or interest payments on debt obligations that were incurred before February 15, 2020. The proceeds of a PPP loan were not permitted to be used to purchase personal residences or to fund the borrower's ordinary day-to-day living expenses.

22.     Every PPP application interacted with the SBA E-Tran server located in Sterling, Virginia. Additionally, SBA transmitted the PPP processing fee to the lender through the FMS server, also located in Sterling, Virginia. Sterling, Virginia is within the Eastern District of Virginia.

**Count 1**
(Conspiracy to Commit Bank Fraud)

23.     The allegations contained in paragraphs 1 through 22 of this Indictment are realleged and incorporated by reference as if set forth fully here.

24.     Beginning no later than about April 2020, and continuing through at least about June 2021, in the Eastern District of Virginia and elsewhere, Defendants

**RAYMOND RAHBAR JR., and
RYAN MACAULEY,**

and others known and unknown to the grand jury, did knowingly and willfully conspire, confederate, and agree with each other to knowingly devise and intend to devise a scheme and artifice to defraud a financial institution, and to obtain any monies, funds, credits, and assets owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

### *The Object of the Conspiracy*

25.     It was the purpose and object of the conspiracy for RAHBAR JR. and MACAULEY to enrich themselves by fraudulently obtaining PPP loans to which they were not entitled.

### *The Manner and Means of the Conspiracy*

26.     To achieve the purpose of the conspiracy and its unlawful objects, RAHBAR JR. and MACAULAY engaged in the following conduct in the Eastern District of Virginia and elsewhere:

27.     The Defendants applied for PPP loans with Bank-1, Bank-2, Bank-3, and Bank-4 (collectively, the "PPP lenders"). Contemporaneously, the Defendants also opened bank accounts with the PPP lenders which they used to receive the PPP funds.

6

28.     In the PPP applications, the Defendants made material misrepresentations. Specifically, the Defendants inflated the number of employees who worked at the BYNDfit entities to increase their payroll costs and, as a result, obtain more money from the PPP lenders. In support, the Defendants submitted fabricated tax forms that reflected their bogus employee count instead of the true number of employees. The Defendants also tried to disguise their ownership of the BYNDfit entities in order to avoid raising the suspicions of the PPP lenders.

29.     The Defendants certified that they would use the PPP funds for authorized purposes. However, the Defendants diverted the money for unauthorized uses.

30.     Throughout the conspiracy, the Defendants fraudulently obtained millions in PPP proceeds and attempted to obtain hundreds of thousands of dollars more. This includes the BYNDfit entities as well as the Construction entities. The PPP loan applications for the Construction entities contained similar material misrepresentations about the number of employees.

### The Fraudulent Loans for BF Chinatown

31.     On or about April 14, 2020, RAHBAR JR. submitted a fraudulent loan application to Bank-1 on behalf of BF Chinatown. In this application, RAHBAR JR. knowingly made numerous materially false and fraudulent representations.

32.     This application falsely represented that: (a) BF Chinatown had 54 employees; (b) BF Chinatown had an average monthly payroll of about $264,862; (c) a person identified here as A.M. was the majority owner of BF Chinatown; and (d) none of BF Chinatown's owners owned or had common management with other businesses. These statements were false and RAHBAR JR. knew they were false. Because the size of the PPP loan depended on the number of employees, these statements were material.

33.    As part of its application, RAHBAR JR. submitted documents that purported to show hundreds of thousands of dollars in payroll expenses. These documents were fabricated, RAHBAR JR. knew these documents were fabricated, and the false statements in those documents were material.

34.    As a result of these false statements, on May 4, 2020, Bank-1 disbursed about $662,155 to a BF Chinatown account ending in 7446 ("Account-1"). The signature card for Account-1 listed an address for BF Chinatown in Great Falls, Virginia which is within the Eastern District of Virginia.

35.    In the PPP application, RAHBAR JR. also certified that all loan proceeds would only be used for authorized purposes. However, much of the money was not used for payroll but instead transferred to RAHBAR JR. and other entities he controlled.

36.    In March 2021, RAHBAR JR. repeated this process and applied for a second draw PPP loan in the name of BF Chinatown. The application for the second draw loan contained similar material misrepresentations and led to fraudulently obtained PPP.

**The Fraudulent Loans for BF Georgetown**

37.    On or about April 14, 2020, RAHBAR JR. submitted a fraudulent loan application to Bank-2 on behalf of BF Georgetown. In this application, RAHBAR JR. knowingly made numerous materially false and fraudulent representations.

38.    This application falsely represented that: (a) BF Georgetown had 18 employees; (b) BF Georgetown had an average monthly payroll of about $131,250; and (c) Pierre was the majority owner of BF Georgetown. These statements were false and RAHBAR JR. knew they were false. Because the size of the PPP loan depended on the number of employees, these statements were material.

8

39.     As part of its application, RAHBAR JR. submitted documents that purported to show hundreds of thousands of dollars in payroll expenses. These documents were fabricated, RAHBAR JR. knew these documents were fabricated, and the false statements in those documents were material.

40.     As a result of these materially false statements, on May 4, 2020, Bank-2 disbursed about $328,100 to a BF Georgetown account ending in 5661 ("Account-2").

41.     In the PPP application, RAHBAR JR. also certified that all loan proceeds would only be used for authorized purposes. However, much of the money was not used for payroll but instead transferred to RAHBAR JR., Pierre, and other entities RAHBAR JR. controlled.

42.     In May 2021, RAHBAR JR. repeated this process and applied for a second draw PPP loan in the name of BF Georgetown. The application for the second draw loan contained similar material misrepresentations but was not approved by the bank.

### The Fraudulent Loans for BF Management

43.     On or about July 1, 2020, MACAULAY submitted a fraudulent loan application to Bank-3 on behalf of BF Management. In this application, MACAULAY knowingly made numerous materially false and fraudulent representations.

44.     This application falsely represented that: (a) BF Management had 22 employees; (b) BF Management had an average monthly payroll of about $135,765; and (c) MACAULAY was the majority owner of BF Management. These statements were false and MACAULAY knew they were false. Because the size of the PPP loan depended on the number of employees, these statements were material.

45.     As part of its application, MACAULAY submitted documents that purported to show hundreds of thousands of dollars in payroll expenses. These documents were fabricated,

MACAULAY knew these documents were fabricated, and the false statements in those documents were material.

46.    As a result of these false statements, on July 6, 2020, Bank-3 disbursed about $339,413 to a BF Management account at Bank-5 ending in 3782 ("Account-3"). The signature card for Account-3 listed an address for BF Management in Arlington, Virginia which is within the Eastern District of Virginia.

47.    In the PPP application, MACAULAY also certified that all loan proceeds would only be used for authorized purposes. However, much of the money was not used for payroll but instead transferred to MACAULAY, RAHBAR JR., and other entities they controlled.

48.    In June 2021, RAHBAR JR. repeated this process and applied for a second draw PPP loan in the name of BF Management with Bank-4. The application for the second draw loan contained similar material misrepresentations and led to fraudulently obtained PPP funds.

**The Fraudulent Loans for AMC Building**

49.    On or about April 27, 2020, RAHBAR JR. submitted a fraudulent loan application to Bank-1 on behalf of AMC Building. In this application, RAHBAR, JR knowingly made numerous materially false and fraudulent representations.

50.    This application falsely represented that: (a) AMC Building had 17 employees; and (b) AMC Building had an average monthly payroll of about $156,400. These statements were false and RAHBAR JR. knew they were false. Because the size of the PPP loan depended on the number of employees, these statements were material.

51.    As part of its application, RAHBAR JR. submitted documents that purported to show hundreds of thousands of dollars in payroll expenses. These documents were fabricated, RAHBAR JR. knew these documents were fabricated, and the false statements in those documents were material.

52.     As a result of these false statements, on May 5, 2020, Bank-1 disbursed about $391,000 to an AMC Building account at Bank-1 ending in 8140 ("Account-4"). The signature card for Account-4 listed RAHBAR JR. as the account owner and an address for AMC Building in Great Falls, Virginia which is within the Eastern District of Virginia.

53.     In the PPP application, RAHBAR JR. also certified that all loan proceeds would only be used for authorized purposes. However, much of the money was not used for payroll but instead transferred to RAHBAR JR., MACAULAY and other entities they controlled.

54.     In June 2021, RAHBAR JR. repeated this process and applied for a second draw PPP loan in the name of AMC Building with Bank-1. The application for the second draw loan contained similar material misrepresentations and led to fraudulently obtained PPP funds.

**The Fraudulent Loans for American Majestic**

55.     On or about April 28, 2020, RAHBAR JR. submitted a fraudulent loan application to Bank-2 on behalf of American Majestic. In this application, RAHBAR, JR knowingly made numerous materially false and fraudulent representations.

56.     This application falsely represented that: (a) American Majestic had 18 employees; and (b) American Majestic had an average monthly payroll of about $156,400. These statements were false and RAHBAR JR. knew they were false. Because the size of the PPP loan depended on the number of employees, these statements were material.

57.     As part of its application, RAHBAR JR. submitted documents that purported to show hundreds of thousands of dollars in payroll expenses. These documents were fabricated, RAHBAR JR. knew these documents were fabricated, and the false statements in those documents were material.

58.     As a result of these false statements, on May 4, 2020, Bank-2 disbursed about $391,000 to an American Majestic account at Bank-2 ending in 2938 ("Account-5"). The

signature card for Account-4 listed an address for American Majestic in Great Falls, Virginia which is within the Eastern District of Virginia.

59.     In the PPP application, RAHBAR JR. also certified that all loan proceeds would only be used for authorized purposes. However, much of the money was not used for payroll but instead transferred to RAHBAR JR., MACAULAY and other entities they controlled.

60.     In June 2021, RAHBAR JR. repeated this process and applied for a second draw PPP loan in the name of American Majestic with Bank-2. The application for the second draw loan contained similar material misrepresentations and led to fraudulently obtained PPP funds.

(All in violation of Title 18, United States Code, Section 1349.)

**Counts 2-6**
(Bank Fraud)

61.     The allegations contained in paragraphs 1 through 60 of this Indictment are reolleged and incorporated by reference as if set forth fully here.

62.     On or about the dates listed below, in the Eastern District of Virginia and elsewhere, the defendants knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud a financial institution and to obtain the moneys, funds, credits, assets, and securities under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises as described below:

| Count | Defendant | Date | Description |
|---|---|---|---|
| 2 | RAHBAR JR. | April 14, 2020 | Fraudulently obtained $328,100 under the custody and control of Bank-2 by submitting a fraudulent PPP loan application on behalf of BF Georgetown. |
| 3 | RAHBAR JR. | April 27, 2020 | Fraudulently obtained $391,000 under the custody and control of Bank-1 by submitting a fraudulent PPP loan application on behalf of AMC Building. |
| 4 | RAHBAR JR. | April 28, 2020 | Fraudulently obtained $391,000 under the custody and control of Bank-2 by submitting a fraudulent PPP loan application on behalf of American Majestic. |
| 5 | RAHBAR JR. MACAULAY | July 1, 2020 | Fraudulently obtained $339,413 under the custody and control of Bank-3 by submitting a fraudulent PPP loan application on behalf of BF Management. |
| 6 | RAHBAR JR. | March 19, 2021 | Fraudulently obtained $384,400 under the custody and control of Bank-1 by submitting a fraudulent second draw PPP loan application on behalf of BF Chinatown. |

(All in violation of Title 18, United States Code, Sections 1344 and 2.)

13

## Count 7
(Conspiracy to Commit Money Laundering)

63.     The allegations contained in paragraphs 1 through 62 of this Indictment are realleged and incorporated by reference as if set forth fully here.

64.     From about April 2020 and about June 2021, in the Eastern District of Virginia and elsewhere, Defendants

### RAYMOND RAHBAR JR., and
### RYAN MACAULEY

knowingly and intentionally combined, conspired, and agreed with each other and others known and unknown to the Grand Jury to knowingly engage in monetary transactions through a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity—namely, bank fraud as alleged in Counts 2, 3, 5, and 6 above—in violation of Title 18, United States Code, Section 1957.

### *The Object of the Conspiracy*

65.     It was the purpose and object of the conspiracy to launder and spend the proceeds of the PPP fraud scheme through various financial transactions.

### *The Manner and Means of the Conspiracy*

66.     To achieve the object of the conspiracy, the Defendants engaged in the following conduct in the Eastern District of Virginia and elsewhere:

67.     After the fraudulently obtained PPP funds arrived, the Defendants would transfer large amounts of the money to each other. Often, RAHBAR JR. would write checks on behalf of the BYNDfit entities to himself and others. These checks did not represent the Defendants' salary and would not be issued using the BYNDfit entities normal payroll processer.

14

68.     In some instances, the Defendants would deposit these checks into their personal accounts. In other instances, BYNDfit wrote several checks for "rent." None of these checks, however, went to Company-1. Instead, they went to RAHBAR JR. through the accounts for 8533 Georgetown—an entity he controlled. RAHBAR JR. used this money for unauthorized purposes including to purchase personal items, to invest in the stock market, and to support his other business ventures.

69.     Many of these transactions involved the proceeds of the bank fraud scheme alleged above and were in excess of $10,000.

(All in violation of Title 18, United States Code, Section 1956(h).)

## Counts 8-11
### (Money Laundering – Unlawful Monetary Transactions)

70.     The allegations contained in paragraphs 1 through 69 of this Indictment are

realleged and incorporated by reference as if set forth fully here.

71.     On or about the dates set forth below, in the Eastern District of Virginia and

elsewhere, Defendants

### RAYMOND RAHBAR JR., and
### RYAN MACAULEY

did knowingly engage and attempt to engage in the following monetary transactions by, through,

or to a financial institution, affecting interstate or foreign commerce, in criminally derived

property of a value greater than $10,000, such property having been derived from a specified

unlawful activity—namely, bank fraud:

| Count | Defendant | Date | Description |
|---|---|---|---|
| 8 | RAHBAR JR. | May 26, 2020 | $15,385 check written by RAHBAR JR. to RAHBAR's personal account representing the proceeds of the scheme to fraudulently obtain a PPP loan on behalf of BF Georgetown as alleged in Count 2. |
| 9 | RAHBAR JR. | June 15, 2020 | $15,000 check written by RAHBAR JR. to RAHBAR's personal account representing the proceeds of the scheme to fraudulently obtain a PPP loan on behalf of AMC Building as alleged in Count 3. |
| 10 | RAHBAR JR. | July 8, 2020 | $130,000 check written by RAHBAR JR. to 8533 Georgetown representing the proceeds of the scheme to fraudulently obtain a PPP loan on behalf of BF Management as alleged in Count 5. |
| 11 | RAHBAR JR. MACAULEY | April 19, 2021 | $12,000 check written by RAHBAR JR. to MACAULEY representing the proceeds of the scheme to fraudulently obtain a PPP loan on behalf of BF Chinatown as alleged in Count 6. |

(All in violation of Title 18, United States, Sections 1957 and 2.)

16

## Count 12-13
### (Aggravated Identity Theft)

72.     The allegations contained in paragraphs 1 through 71 of this Indictment are realleged and incorporated by reference as if set forth fully here.

73.     On or about the dates listed below, in the Eastern District of Virginia, and elsewhere, Defendant

## RAYMOND RAHBAR JR.

did knowingly transfer, possess, or use without lawful authority, the means of identification as described below during and in relation to the crime of conspiracy to commit bank fraud as alleged in Count 1 above:

| Count | Date | Description |
|-------|------|-------------|
| 12 | April 14, 2020 | RAHBAR JR. used identity theft victim H.B.'s means of identification—including her physical address, email address, and phone number—while applying for a PPP loan on behalf of BF Chinatown. |
| 13 | May 7, 2021 | RAHBAR JR. used Carl Pierre's means of identification—including his driver's license and social security number—while applying for a PPP loan on behalf of BF Georgetown. |

(All in violation of Title 18, United States Code, Section 1028A.)

## Count 14
(Bankruptcy Fraud – Perjury)

74.     The allegations contained in paragraphs 1 through 73 of this Indictment are realleged and incorporated by reference as if set forth fully here.

75.     On or about August 3, 2023 in the Eastern District of Virginia and elsewhere, Defendant

**RAYMOND RAHBAR JR.**

knowingly and fraudulently made a false material statement under oath during an in relation to a case under Title 11, In re: BF Management, Case No. 23-10919, by false testifying under oath in a proceeding before the case trustee at a meeting of creditors that he—as owner of BF Management—paid $246,666.66 in payroll during the first quarter of 2020 when in fact, he knew that he paid less than $4,000 in payroll during the first quarter of 2020.

(All in violation of Title 18, United States Code, Section 152(2).)

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

Pursuant to Federal Rule of Criminal Procedure 32.2(a), Defendants RAYMOND RAHBAR JR., and RYAN MACAULEY are hereby notified that, if convicted of an offense alleged in Counts 1 through 6 of this Indictment, the Defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), their interest in any property constituting, or derived from, proceeds they obtained directly or indirectly, as the result of the offense.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), Defendants RAYMOND RAHBAR JR., and RYAN MACAULEY are hereby notified that, if convicted of an offense alleged in Counts 7 through 11 of this Indictment, the Defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), their interest in any property, real or personal, involved in such offense, or any property traceable to such property.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), Defendants RAYMOND RAHBAR JR. is hereby notified that, if convicted of the offense alleged in Count 14 of this Indictment, the Defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), their interest in any property, real or personal, constituting or derived from proceeds traceable to the offense.

The property subject to forfeiture includes, but is not limited to, a sum of money representing the amount involved in the offenses.

If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture

19

of any other property of the defendant, as subject to forfeiture under Title 21, United States

Code, Section 853(p).


(In accordance with Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and
982(a)(2)(A); Title 28, United States Code, Section 2461(c); and Rule 32.2(a), Federal Rules of
Criminal Procedure.)


A TRUE BILL

<span style="color:red">Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office</span>

_____

FOREPERSON

Jessica D. Aber
United States Attorney


_____

Christopher J. Hood
Kristin S. Starr
*Assistant United States Attorneys*