IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



UNITED STATES OF AMERICA

v.  Case No. 1:24-cr-180-PTG

RAYMOND RAHBAR, JR.,

*Defendant.*

## STATEMENT OF FACTS

The United States and the Defendant, RAYMOND RAHBAR, JR., stipulate that the allegations in the Superseding Indictment are true and correct. The United States and the Defendant further stipulate that had the matter gone to trial, the United States would have proven the allegations in the Superseding Indictment and the following facts beyond a reasonable doubt through admissible and credible evidence.

### *Introduction*

1. RAHBAR was a co-founder of a fitness center called BYNDfit. BF Chinatown LLC, BF Georgetown Waterfront LLC, and BF Management LLC (collectively, the "BYNDfit entities") were created to facilitate the operation of BYNDfit. RAHBAR co-founded BYNDfit with Ryan Macaulay and Carl Pierre and RAHBAR was the de facto CEO of the company.

2. Bank-1, Bank-2, Bank-3, and Bank-4 provided a range of traditional banking services throughout the United States, including in the Eastern District of Virginia, and are financial institutions for purposes of Title 18, United States Code, Sections 20 and 1344.

3. The Small Business Administration ("SBA") was an agency within the United States Government that provided financial assistance to small businesses, including administering and financing the Paycheck Protection Program ("PPP"). The SBA's computer

servers receive information about PPP loan applications and are located within the Eastern District of Virginia.

4. The Paycheck Protection Program ("PPP") was an SBA program that provided low-interest financing to small businesses to pay up to 8 weeks of payroll costs including benefits. Businesses that qualified for funds could also use that money to pay interest on mortgages, rent, and utilities. The money to fund this program came from the United States Treasury.

5. The SBA was authorized to provide PPP loans of up to $10 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. The amount of the loan was determined by the number of employees the applicant certified having.

6. To obtain a PPP loan, a qualifying business was required to submit an application to an eligible private lender, such as a federally insured bank, a federally insured credit union, Farm Credit System institution, or a Small Business Administration-approved lender, and provide documentation about its operations to support the amount of the loan applied for, such as payroll reports, payroll tax filings, Form 1099-MISC, or a sole proprietor's income and expenses. An applicant for a PPP loan was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

7. After a PPP application was submitted and approved to the private lender, the SBA would reimburse the lender. The amount of the loan, if the application was approved, was based on an applicant's stated number of employees, salary, expenses, and revenue. If the company that received the PPP loan could not pay it back, it could seek to have that loan forgiven.

### *The Scheme to Defraud*

8. Between on or about April 2020 and June 2021, in the Eastern District of Virginia and elsewhere, the defendant RAYMOND RAHBAR, JR. did knowingly and willfully conspire, confederate, and agree with others known and unknown to knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain any monies, funds, credits, and assets owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

9. Specifically, RAHBAR, Macaulay, and Pierre applied for PPP loans with various financial institutions, including Bank-1, Bank-2, Bank-3, and Bank-4. In those applications, RAHBAR and his coconspirators inflated the number of employees who worked at the BYNDfit entities to increase their payroll costs and, as a result, obtain more money from the PPP lenders. RAHBAR and his coconspirators did this by submitting purported payroll summaries that listed as employees people who did not work for BYNDfit. In support of their applications, RAHBAR submitted fabricated tax forms that reflected their inflated employee count instead of the true number of employees. RAHBAR organized and led the effort to fraudulently obtain PPP loans.

10. In reality, BYNDfit never opened to the public and never employed the number of people claimed.

11. For example, on the first draw PPP application for BF Chinatown, RAHBAR claimed that BF Chinatown employed 54 people and had an average monthly payroll of almost $265,000. The accompanying payroll summary listed people who never worked as employees at BYNDfit, including multiple people whose only interaction with BYNDfit was providing their name and personal identifying information ("PII") to BYNDfit at a career fair. The payroll

summary listed at least 10 people who did not authorize BYNDfit to use their name and PII on the loan applications.

12. For instance, a person identified here as H.B. attended a career fair at Georgetown University in early 2020 where she met representatives from BYNDfit. The payroll summary submitted with BF Chinatown's PPP application: (a) included H.B.'s name, physical address, email address, and phone number; (b) listed H.B. as a member experience associate making $48,000 per year. However, H.B. never worked at BYNDfit and did not authorize BYNDfit to use H.B.'s means of identification.

13. In support of that application, RAHBAR submitted a Form 941 for Q1 2020 that claimed BF Chinatown employed 54 people. The tax forms that RAHBAR submitted to the bank were never filed with the IRS. Indeed, BF Chinatown submitted no Form 941 for Q1 at all. Records from the Virginia Employment Commission confirmed that the representations on the PPP application were false.

14. RAHBAR knew that the applications he and his coconspirators submitted inflated the number of employees who actually worked at the BYNDfit entities. Based on the false representations included in the PPP applications, the BYNDfit entities received five fraudulent PPP loans.

15. Additionally, using the same type of misrepresentations about the number of employees, RAHBAR also obtained four PPP loans on behalf of two construction companies he controlled: AMC Building Group and American Majestic Construction.

16. In total, RAHBAR fraudulently obtained at least $3.1 million in PPP loans, including over $1.5 million from Bank-1. RAHBAR also unsuccessfully attempted to obtain several Economic Injury Disaster Loans.

*Conclusion*

17. This statement of facts includes those facts necessary to support the plea agreement between RAHBAR and the United States. It does not include each and every fact known to RAHBAR or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. RAHBAR acknowledges that the foregoing statement of facts does not describe all of his conduct relating to the offenses charged in this case.

18. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Erik S. Siebert
United States Attorney

Date: 4/10/2025    By: _____
Christopher J. Hood
Kristin S. Starr
Avi Panth
*Assistant United States Attorneys*

After consulting with my attorney and pursuant to the plea agreement entered into this day between defendant, RAYMOND RAHBAR, JR, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Raymond Rahbar Jr
Defendant


I am the Defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Joseph T. Flood
Patrick F. Stokes
Alyse Ullery-Glod
Counsel for Defendant